IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| HIGUCHI INTERNATIONAL CORPORATION d/b/a HIGUCHI MANUFACTURING AMERICA, a Delaware corporation, | ) ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. |
| v. | ) ) ) | Hon. |
| AUTOLIV ASP, INC., an Indiana corporation, | ) ) ) | |
| Defendant. | ) ) ) | |

## COMPLAINT

Plaintiff, by and through the undersigned counsel and for its Complaint against Defendant Autoliv ASP, Inc. ("Autoliv") states and alleges as follows:

## PARTIES

1. Plaintiff Higuchi International Corporation d/b/a Higuchi Manufacturing America ("Higuchi") is a Delaware corporation with its principal place of business at 14901 Southton Rd, Elmendorf, TX 78112.

2. Defendant Autoliv ASP, Inc. ("Autoliv") is an Indiana corporation with its principal place of business located at 1320 Pacific Drive, Auburn Hills, MI 48326.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over Higuchi's claim pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000 and the dispute is between citizens of different states.

4. Venue is proper in this district under 28 U.S.C. § 1391(d) because Autoliv is located in this District and agreed to litigate here.

## BACKGROUND

5. Higuchi purchases steel from non-party Coil Plus, Inc. and stamps it into automotive component parts for sale to automotive suppliers.

6. Higuchi and Autoliv are parties to a long-term supply agreement under which Higuchi agreed to sell to Autoliv and Autoliv agreed to purchase from Higuchi stamped steel parts required by Autoliv or its affiliated entities to build automotive components subject to applicable terms and conditions. The Agreement ("LTA") and Terms and Conditions are attached hereto as Exhibits 1 and 2.

7. Higuchi and Autoliv are also parties to a Raw Materials Agreement ("RMA") under which the parties agreed to a mechanism to quarterly set the price Autoliv would pay Higuchi for the steel Higuchi purchased to manufacture Autoliv's parts subject to the Terms and Conditions. The RMA is attached hereto as Exh. 3.

8. Based on Autoliv's forecasts, Higuchi would purchase the steel necessary to manufacture the forecasted quantity of parts at least three months in advance and pay the price charged for the steel at that time.

9.     Autoliv's forecasts were inaccurate leaving Higuchi with excess steel inventory that when used to satisfy later orders will be priced at an amount lower than what Higuchi paid.

10.    Article 26 of the Terms and Conditions is a *force majeure* provision that excuses a party from liability for a breach of its obligations under the Agreement if caused by any circumstance beyond the reasonable control of that party.

11.    The COVID-19 pandemic has disrupted business throughout the world disrupting schedules/forecasts and caused manufacturing and shipping delays, material shortages and labor shortages.

12.    Due to circumstances beyond its reasonable control, Higuchi can no longer meet what Autoliv has asserted are Higuchi's obligations under the LTA and the terms of the RMA should be adjusted or set aside.

13.    Higuchi has tried to negotiate a resolution and sustainable way to move forward but Autoliv has refused to negotiate toward such a result.

14.    Higuchi has and will continue to incur significant unanticipated costs beyond its reasonable control making it impossible to meet Autoliv's requirements caused by

(a)     Steel shortages and Autoliv delays in negotiating with Coil Plus and approving alternate steel suppliers;

(b)     Inconsistent and unpredictable Autoliv forecasting and ordering;

(c)     Autoliv's failure to provide promised revenue and profits through increased sales growth; and

(d)     An unanticipated increase in raw material steel prices.

15.     Higuchi has declared and given Autoliv notice under Article 26 of the Terms and Conditions of a *force majeure* situation relieving it from liability for its inability to meet Autoliv's requirements under the LTA and to adjust or set aside prices under the RMA.

16.     Autoliv has disputed Higuchi's declaration of *force majeure* and demanded that Higuchi continue to manufacture and deliver the parts Autoliv is ordering.

17.     Higuchi is unable to comply with Autoliv's unrealistic demands, which are contrary to the parties' contract and fail to recognize the relief under the LTA and RMA afforded to Higuchi under these circumstances.

### COUNT I – DECLARATORY RELIEF

18.     Higuchi repeats and realleges all of the previous paragraphs here.

19.     There exists an actual and current controversy between Higuchi and Autoliv over the application of the *force majeure* provision in Article 26 of the Terms and Conditions as applied to the LTA, RMA and Autoliv's demands.

20.     Higuchi has properly given notice to Autoliv of the *force majeure* condition that exists.

21.     Autoliv has argued that there is no *force majeure* condition giving rise to the suspension of Higuchi's purported LTA obligations, the release of liability to Higuchi from failing to meet those purported LTA obligations or the setting aside or adjustment of prices under the RMA to reflect reality.

22.     Pursuant to Fed. R. Civ. P. 57, the Court may order a speedy hearing of this declaratory judgment action, which Higuchi requests.

WHEREFORE Higuchi seeks a declaratory judgment from the Court that states Higuchi has properly declared *force majeure* under the LTA, it is relieved from liability for not meeting its purported obligations under the LTA to Autoliv at the unrealistic prices and quantities demanded by Autoliv, and that the RMA pricing is to be set aside or adjusted.

## COUNT 2 – COMMERCIAL IMPRACTICABILITY

23. Higuchi repeats and realleges all of the previous paragraphs here.

24. The current manufacturing environment feeling the affects of the COVID-19 pandemic makes it impossible for Higuchi to meet the purported LTA obligations Autoliv seeks to impose on it or accept the RMA pricing.

25. Autoliv's actions, delays and failure to meet its promised sales volumes has exacerbated the impact of the COVID-19 effects upon Higuchi.

26. The unanticipated effect of COVID-19 combined with Autoliv's conduct has brought about the occurrence of a contingency the non-occurrence of which was a basic assumption on which the LTA and RMA were made.

27. The LTA are RMA are contacts for the sale and purchase of goods subject to the Uniform Commercial Code.

28. Section 2-615 of the Uniform Commercial Code excuses Higuchi from performing under the LTA and RMA due to the failure of presupposed conditions, including, but not limited to: Autoliv's failure to meet its promised increase in sales volumes, Autoliv's unpredictable and inconsistent ordering and forecasting, a shortage and increase in the price of raw material steel.

**WHEREFORE** the Court should enter judgment in favor of Higuchi relieving it of its purported obligations under the LTA as impracticable under UCC 2-165 and adjusting or setting aside the RMA.

                                        Respectfully submitted,

                                        MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

                                        By:/s/Todd A. Holleman
                                            Todd A. Holleman
                                            Holleman@MillerCanfield.com
                                            Attorneys for Plaintiff
                                            150 West Jefferson, Suite 2500
                                            Detroit, Michigan 48226
                                            (313) 963-6420

Dated: November 30, 2021

38366834.1/013363.00043